## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | DOCKET NO. 2:24-cr-00068-NT |
| | ) | |
| | ) | |
| WILLIE BANKS | ) | |
| | ) | |

### DEFENDANT'S MOTION TO SUPPRESS

Defendant Willie Banks, by and through counsel, hereby moves this Court to suppress all evidence obtained directly or derivatively from the invalid warrant to search 290 Cumberland Street because the affidavit included false statements made with reckless disregard for the truth and contained material omissions necessary for the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 156 (1978). All such evidence was obtained in violation of Mr. Banks's rights under the Fourth Amendment to the Constitution. This motion will establish the need for a *Franks* hearing to challenge the veracity of the affidavit and to ensure that the judge's probable cause determination was not based on false or omitted information.

This motion reflects information contained in the discovery produced to date, including a surveillance video provided to police officers by a neighbor on the date in question.[1] In order to justify a *Franks* hearing, facts from the discovery and the video are compared below to the sworn allegations of Detective Jeffrey Stackpole in his Affidavit and Request for a Search Warrant.[2]

---

[1] Marked as Def. Ex. 1.
[2] Marked as Def. Ex. 2.

## I.    STATEMENT OF FACTS

On March 13, 2024, Nadira Thompson threatened to kill Mackenzie Ross via text message. Ms. Ross was at 290 Cumberland Street along with Mr. Banks and Melissa Staples. The body-worn cameras of officers who responded to 290 Cumberland Street depict in color Ms. Ross who was wearing a light-colored top and dark bottoms, Mr. Banks who was wearing a short sleeve black shirt and dark pants with colored patches on them, and Ms. Staples who was wearing a black hooded sweatshirt and dark pants.[3] All three adults are of a similar build. Ms. Staples is not a prohibited possessor.

**NOTE: Stackpole's affidavit omitted any physical description of Ms. Ross, Mr. Banks and Ms. Staples. It omitted that Ms. Staples was not a prohibited possessor.**

There is video footage of the outside of 290 Cumberland Street. (Exhibit 1). Ms. Thompson appeared at 290 Cumberland Street uninvited. She walked into apartment 1 uninvited and without knocking. Ms. Thomas found Ms. Ross in the home, pulled out a gun, pointed it at Ms. Ross's head, pulled the hammer back, and threatened to kill her.

**NOTE: Stackpole's affidavit made no mention of the circumstances that led up to the discharge of the firearms. It did not include any mention of Ms. Thompson's documented threats to kill Ms. Ross nor of Ms. Thompson holding Ms. Ross at gunpoint.**

---

[3] Bates Number 282 at 0:36-0:40 contains images of Ms. Staples upon the arrival of officers. Bates Number 284 at 0:48 contains images of Ms. Ross upon the arrival of officers. These videos were disclosed as sensitive discovery and are, therefore, not reproduced in this motion.

2

After a few terrorizing moments, Ms. Thomas left the apartment. Someone from the apartment, Ms. Ross, Mr. Banks, or Ms. Staples, followed her out onto the porch. Here is a screenshot from the video produced to the defense in discovery of that interaction:[4]



**NOTE: In Paragraph 5 of his affidavit, Stackpole said that he viewed the video and concluded that the above interaction was an argument between Ms. Thomas and Mr. Banks.**

Ms. Thomas walked up the driveway and the person she was talking to returned inside.

**NOTE: In Paragraph 6 of Stackpole's affidavit he omitted that the person who interacted with Ms. Thomas outside returned inside. Instead, he repeated his conclusion that Ms. Thomas and Mr. Banks argued.**

As she is walked up the driveway, Ms. Thomas fired a gun into the air:[5]

---

[4] Def. Ex. 1 at 02:59. The video quality may be slightly better than the screenshots, but Counsel has attempted to make them as true to the video as possible and included the video as Exhibit 1.
[5] Def. Ex. 1 at 03:14.



Someone emerged from the apartment and fired a weapon in Ms. Thomas's direction

before returning inside:[6]



**NOTE: Paragraph 6 of Stackpole's affidavit said that in response to Ms. Thomas firing her handgun, "Banks, who was on the porch on the side of the building, runs into the apartment and returns with a handgun and fires six rounds in the direction of Thomas. None of the rounds strike Thomas."**

**NOTE: In Paragraph 11 of his affidavit, Stackpole said that Robinson "immediately recognized the male in the video as Banks." Stackpole stated in this paragraph that "the video clearly shows a male exit apartment 1 and fire six rounds at Thomas as she is walking up the driveway."**

---

[6] Def. Ex. 1 at 03:18.

**NOTE: In Paraph 7 of his affidavit, Stackpole stated that "Banks runs back into the apartment and calls 911."**

Shortly afterward, an individual exited apartment 1 and knocked on the door of a rear apartment. Here is a still shot of an individual exiting the apartment to knock on the neighbor's door:[7]



**NOTE: Paragraph 7 of Stackpole's affidavit concluded that Mr. Banks was the individual who emerged from the apartment and knocked on the door of a rear apartment before returning to apartment 1.**

A second person exited apartment 1 and joined the first person outside for a brief time before they both returned inside.

**NOTE: Paragraph 7 of Stackpole's affidavit omitted that a second person exited apartment 1, erroneously stating "no one else exits or enters the apartment after the shooting."**

Shortly thereafter, Mr. Banks exited the apartment, walked to the top of the driveway and flagged down the approaching police vehicles.

---

[7] Def. Ex. 1 at 04:42.

In the course of their investigation, officers were approached by a neighbor who had security cameras directed at 290 Cumberland Street. He showed the video of the gun shots to officers multiple times on his cell phone as his spouse worked to obtain a copy of the footage to turn over to police. After reviewing the video Special Agent Phil Robinson identified the person firing from the porch as Mr. Banks. Upon receiving this identification from Robinson, Mr. Banks, was handcuffed and secured in the back of a police cruiser.

Investigating officers attempted to interview Ms. Staples who told officers nothing more than that she heard shots outside the apartment and called 911 for help.

Ms. Ross was interviewed by Robinson. She said that Ms. Thomas held her at gun point and made threats to kill her before being ushered out of the apartment by Mr. Banks and Ms. Staples who asked her to leave. Ms. Ross informed Robinson that she walked into the kitchen where Mr. Banks and Ms. Staples were. It was at that point Ms. Ross heard 3–4 gunshots come from outside. Ms. Ross told Robinson that she grabbed Ms. Staples and forced her to the ground and that Mr. Banks was in the kitchen and dropped to the floor to avoid being shot from outside. Robinson's report indicates that he did not believe Ms. Ross's version of events. He told her that he knew that Mr. Banks returned fire at Ms. Thomas. According to the report, Ms. Ross began to tear up and told Robinson that she did not know anything about that. She did not discuss Mr. Banks any further.

**NOTE: Stackpole omitted from Paragraph 10 Ms. Ross's statement that at the time shots were fired Mr. Banks was in the kitchen and dropped to the floor to avoid being shot from outside.**

Later that night, Stackpole submitted an affidavit requesting a search warrant to search "the residence owned, or under the control of Willie Banks and Melissa Staples at 290

6

Cumberland Street…."[8]  The statements in the affidavit were based on information provided by sources other than Stackpole. Specifically, he relied on the surveillance video and on the statements of Robinson. On the basis of Stackpole's affidavit the District Court for the State of Maine (Darvin, J.) issued a Search Warrant.[9] The instant indictment arises from the execution of that warrant on March 13-14, 2024. A firearm, seized from the basement of 290 Cumberland Street forms the basis of the charge against Mr. Banks.

## II.      ARGUMENT

A law enforcement officer's affidavit generally enjoys a presumption of validity. *Franks v. Delaware,* 438 U.S. at 171. Where a defendant makes a substantial preliminary showing that the officer's affidavit contained statements made with reckless disregard for the truth, and where that statement was material to a probable cause determination, the Fourth Amendment entitles the defendant to a hearing to further test the affidavit's veracity. *Id.* at 155. In addition to false statements, material omissions may also form the basis for a *Franks* Hearing. *See U.S. v. Gifford,* 727 F.3d 92, 99-100 (1st Cir. 2013). "Reckless may be inferred 'from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" *U.S. v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984)). "In the case of allegedly material omissions, 'recklessness may be inferred where the information was critical to the probable cause determination.'" *Burke v. Town of Walpole*, 405 F.3d 66, 82 (1st Cir. 2005) (quoting *Golino v. New Haven*, 950 F.2d 864, 871 (2d Cir. 1991)). An omission "triggers the exclusionary rule only if it is 'designed to mislead, or . . . made in reckless disregard of whether

---

[8] Def. Ex. 2.
[9] Def. Ex. 3.

[it] would mislead, the magistrate'" *U.S. v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015) (citing *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

A warrant cannot be based on evidence obtained through illegal means. When evaluating affidavits containing "tainted" evidence, the illegally obtained evidence should be set aside and "the remaining content of the affidavit examined to determine whether there was probable cause to search, apart from the tainted averments." *United States v. Ford*, 22 F.3d 374, 379 (1st Cir. 1994) (quoting *United States v. Veillette*, 778 F.2d 899, 904 (1st Cir. 1985), *cert. denied*, 476 U.S. 1115 (1986)).

    a.   **Stackpole's Affidavit Contained Misrepresentations Made in Reckless Disregard for the Truth Necessitating a *Franks* Hearing.**

Stackpole's warrant affidavit contained two significant misrepresentations. First, it falsely claimed that the shooter was clearly male and could be identified from the video as Mr. Banks. Second, Stackpole used these false assumptions to draft an affidavit that assumed that every person in the video, other than Ms. Thomas, was Mr. Banks.

The video evidence does not "clearly show a male exit apartment 1," and it is impossible to "immediately recognize[] the male in the video as Banks."[10] It is difficult to decern the gender of any person in the surveillance video. The neighbor who recorded, watched, and turned the video over to police mistakenly referred to both shooters as male, but there is no dispute that the first shooter was Ms. Thompson, a female. The footage is so grainy it is impossible to make a positive identification of any individual.

---

[10] Def. Ex. 2, ¶11.

All that can be ascertained from the video is that there were two shooters. One shooter was in the driveway and the other was near the door of the apartment. You cannot tell from a review of the video the race, gender, or identity of either shooter. Stackpole's conclusory statements that the shooter near the door of the apartment was "clearly" a male and his inclusion of Robinson's statement that he "immediately recognized the male in the video as Banks" was either knowingly and intentional false or made with reckless disregard for the truth.

Similarly in Paragraphs 5, 6, and 7, Stackpole assumed that Mr. Banks was the individual depicted in the video. Stackpole's conclusory statements that it was Mr. Banks who could be seen on the video are unfounded assumptions and very likely influenced the reviewing judge's evaluation of probable cause. The intentional and continued use of Mr. Banks's name rather than the more accurate moniker "a person in dark clothing" was done either intentionally or with reckless disregard for the truth and with the specific intent of persuading a judge to issue the warrant which otherwise lacked the evidence to support probable cause.

Compounding these false statements, Stackpole's affidavit makes one other misrepresentation. He incorrectly states in Paragraph 7 that "no one else exits or enters the apartment after the shooting." A review of the video shows that after the shooting occurred, two people exited and then re-entered the apartment. Stackpole's continued failure to accurately describe what occurs in the video evidences either the poor quality of the video or his false statements made intentionally, knowingly or with reckless disregard for the truth. Either way, the affidavit contained falsities that call into question the validity of the warrant.

This Court is now in possession of the actual footage that formed the basis for the search warrant. The video speaks for itself, and it is for the Court to review the video and compare it to the description given by Stackpole and Robinson in the affidavit. The conclusory statements that

the shooter in the video is "clearly a male" and that Mr. Banks is easily identified from the video are facially inconsistent with the video itself.  A true and accurate description of the video is material to a showing of probable cause. The search warrant would read much differently if every reference to Mr. Banks read "a person in dark clothing." Without the constant use of Mr. Bank's name, the affidavit would be reduced to the fact that an individual dressed in dark clothing returned fire in the direction of Ms. Thompson.

> **b. Stackpole Intentionally or Recklessly Omitted Information That Would Have Vitiated Probable Cause.**

In addition to the false statements, Stackpole's affidavit is laden with omissions. He omitted from the affidavit any indication that the video is small, unclear, and grainy. He failed to include any information concerning the circumstances leading up to the shooting. He omitted the possibility that Ms. Staples, who is not a prohibited possessor, could have been the shooter. And he did not include the statements made by Ms. Ross placing Mr. Banks inside the apartment at the time of the shooting. There can be little doubt that these details would have been essential to evaluating probable cause.

Nowhere in his affidavit did Stackpole indicate that the video is of such poor quality. He did not indicate that the video is in black and white only. He did not say that you cannot see the faces of any individual in the video. He did not indicate that the best description of the clothing worn by individuals in the video is that they are light or dark in color. He did not include that neither the skin color nor the gender of those in the video can be ascertained. Given that his affidavit relied so heavily on what the video depicts, Stackpole, at a minimum, recklessly failed to accurately describe the quality of the video.

10

The affidavit makes no mention of the circumstances leading up to the shooting that occurred outside 290 Cumberland Street. In the hours and minutes leading up to the shooting, Ms. Thomas threatened Ms. Ross via text message. When Ms. Thompson entered the apartment uninvited, she held a gun to Ms. Ross's head and threatened to kill her. Ms. Thomas went so far as to pull back the hammer of the firearm apparently preparing to fire it at Ms. Ross.  Failing to include this information in the affidavit was a material omission.

There were three adults in the apartment before Ms. Thomas entered: Mr. Banks, Ms. Staples, and Ms. Ross. Mr. Banks was wearing a short sleeve black shirt and dark pants with colored patches on them. Ms. Staples was wearing a black hooded sweatshirt and dark pants. Ms. Ross was wearing a light-colored top and dark bottoms. Ms. Staples is not a prohibited possessor. All three adults are of a similar build. This was a warrant for felon in possession of a firearm. Ms. Staples was located within the home at the time the shooting occurred, and she matches the description of one of the shooters in the video. This information reduces the probability that Mr. Banks possessed a firearm that would be found inside the 290 Cumberland Street, apartment 1.

Regarding Ms. Ross's statements, Stackpole failed to include her statement that, at the time of the shooting, Mr. Banks was inside the apartment laying on the floor. Regardless of Stackpole's belief in the veracity of her statements, he should have included this exculpatory information in the warrant application. The egregiousness of this omission is amplified by Stackpole's choice to include other portions of Ms. Ross's statement to Robinson in the affidavit. This omitted information was critical to assess whether there was probable cause to believe Mr. Banks committed the crime of possession of a firearm by a felon. If the affidavit had included an accurate description of the quality of the video, described the circumstances leading up to the

11

shooting, made clear that Ms. Staples could have been the shooter, and contained Ms. Ross's assertion that Mr. Banks was inside at the time of the shooting, probable cause would not exist.

### III.   CONCLUSION

At a minimum, recklessness can be inferred directly from the false statements made by Stackpole and Robinson. Undoubtably, the ability to identify Mr. Banks as a shooter was information critical to a probable cause determination. However, the ability for anyone to make such an identification based on the video is unfathomable. This false assertion alone creates a substantial showing that Mr. Banks is entitled to a *Franks* hearing. But, if all of the false statements are excised and all of the omissions included, a warrant would not have issued. Therefore, Mr. Banks is entitled to suppression of all evidence derived from the issuance of the invalid search warrant.

DATED: August 16, 2024

*/s/ Caleigh S. Milton*_____
Caleigh S. Milton
Attorney for Defendant
Assistant Federal Defender
P.O. Box 595
Portland, Me 04112-0595
207-553-7070
FAX: 553-7017
caleigh_milton@fd.org

## CERTIFICATE OF SERVICE

I, Caleigh S. Milton, attorney for Willie Banks, hereby certify that I have served electronically, a copy of the within **MOTION TO SUPPRESS AND REQUEST FOR FRANK'S HEARING** upon Assistant United States Attorney Peter Brostowin and via the ECF system.


DATE: August 16, 2024                                   */s/ Caleigh S. Milton*
                                                        Caleigh S. Milton