UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

UNITED STATES OF AMERICA )
)
v. ) No. 2:24-cr-00068-LEW
)
WILLIE BANKS )
)
Defendant )

## ORDER ON DEFENDANT'S RENEWED MOTION FOR SANCTIONS

Defendant Willie Banks awaits trial on a one-count indictment charging him with being a felon in possession of a firearm. Before the Court is Defendant's Renewed Motion for Sanctions (ECF No. 90). Ruling on Defendant's Motion is RESERVED pending further proceedings, as outlined below.

## BACKGROUND

This case began with a shooting that took place on March 13, 2024, outside of Defendant's apartment at 290 Cumberland Street in Westbrook, Maine, in view of a neighbor's security camera. MDEA Special Agent Phil Robinson reviewed this video footage and identified Defendant, claiming to recognize him from "previous police work." Detective Jeffrey Stackpole eventually applied for a warrant to search the apartment, in support of which he swore out an affidavit describing the video footage. Law enforcement found a firearm in the residence when they executed the search warrant later that night.

Defendant was indicted on June 5, 2024. On June 10, 2024, the Court entered its standard order "remind[ing]" the Government "of its obligation to disclose in a timely

manner all exculpatory evidence to the defendant, that is, all evidence that is favorable to the defendant or tends to cast doubt on the United States' case, as required by *Brady v. Maryland* . . . and its progeny," and noting that "[f]ailure to comply with this order may result in consequences, including, but not limited to, the reversal of any conviction, the exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, and/or sanctions by the Court." *See* Order (ECF No. 10). Eight days later, the Government sent its first discovery production, which included the March 13, 2024, security camera video and reports of law enforcement pertaining to that incident.

In August 2024, Defendant moved for a *Franks* hearing (ECF No. 22), arguing that Det. Stackpole's affidavit contained several misrepresentations and omissions in its identification of Defendant as the shooter. I denied that request, on the grounds that the affidavit sufficed to establish a fair probability that a crime occurred, evidence of which would be found in Defendant's apartment—even excluding the contested identifying statements. *See* Order on Def. Request for *Franks* Hr'g (ECF No. 28). A hearing was held on Defendant's remaining arguments in support of suppression on January 16, 2025. *See* Minute Entry (ECF No. 32).

At that hearing, defense counsel introduced documents meant to impeach Det. Stackpole, the only witness to testify for the Government.[1] Defense counsel obtained these documents not from the Government, but from a colleague and a request under the Maine

---

[1] The documents are best described as *Giglio* information consisting of reprimands in Det. Stackpole's personnel records.

Freedom of Access Act. Seeing the Government's failure to produce these documents as a violation of its discovery obligations under both the U.S. Constitution and the Federal Rules of Criminal Procedure, Defendant moved for sanctions following the hearing (ECF No. 40), requesting an order prohibiting the Government from introducing at trial any evidence obtained pursuant to the contested search warrant.

Ultimately, I denied Defendant's suppression motion. *See* Order on Def. Mot. to Suppress (ECF No. 44). I also denied Defendant's motion for sanctions, reasoning that Defendant had not been prejudiced by the failure. *See* Order on Def. Mot. for Sanctions (ECF No. 45). In that order, however, I cautioned the Government that it "should not feel vindicated by the fortuity of a no-harm-no-foul ruling." *Id*. at 9. I expressed deep concern with the Government's approach to its discovery obligations in this case. *Id*.

Defendant's case was set for trial in the first week of June 2026. In the lead-up to trial, an investigator working with the defense called the neighbor whose security camera recorded the shooting incident on March 13, 2024. Before terminating the interview, the neighbor let the investigator know that Agent Robinson had remote access to the security system. On April 30, 2026, defense counsel took this information to the Assistant U.S. Attorney, who promised to look into the matter. On May 5, 2026, the Assistant U.S. Attorney and FBI Task Force Officer Jason Leadbetter interviewed Agent Robinson, who revealed that he had known the neighbor (himself a former Westbrook Police Officer) since 2008. This neighbor regularly contacted police to report disturbances and suspicious activity at 290 Cumberland Street. Agent Robinson recalled that, at one point, the Westbrook Police Department had a camera installed on the neighbor's property to monitor

290 Cumberland Street.  In 2021, the neighbor installed a surveillance camera to face 290 Cumberland Street and created an account for Agent Robinson that afforded him remote access to the camera from his department-issued cell phone.  Agent Robinson reported that he used this access to monitor the camera with "some regularity" between 2021 and March 2024.  Def. Ex. 6 at 1.  Agent Robinson did not document this arrangement or his use of the camera in any report.  The Government produced a memorandum memorializing this interview to defense counsel on May 6, 2026.  On June 18, 2026, following the filing of the instant motion for sanctions, the Government also produced additional discovery to the defense, which included a tranche of text messages between Agent Robinson and the neighbor's spouse spanning five years.[2]  *See* Def. Exs. 11-A, 11-B, 11-C, 11-D.

The Government maintains that the camera's nonpublic view of 290 Cumberland Street is apparent from the video footage itself, which was produced to the defense in June 2024, and that references to Agent Robinson's "remote access" to that footage are littered throughout the various reports and body-worn camera videos associated with the incident, which were also produced in June 2024.  What was not disclosed was the extent of that access—that since 2021, Agent Robinson had ongoing access to a surveillance camera that allowed him to monitor 290 Cumberland Street from his cell phone whenever he felt inclined to do so, without any judicial authorization.

---

[2] This production was made in response to Defendant's request for additional discovery pertaining to the security camera by a letter dated May 15, 2026.  *See* Gov't Ex. 15.

**DISCUSSION**

In support of his claim that he was deprived of *Brady* material by the Government's failure to disclose the full extent of Agent Robinson's surveillance activities, Defendant contends that this information would have supported his motion to suppress and allowed him to litigate the constitutionality of that surveillance. He argues that what Agent Robinson later revealed about his dealings with the neighbors shows that the neighbor installed the security system as an agent or instrument of law enforcement. He also contends that the security system afforded Agent Robinson continual, on-demand, technology-assisted access to a non-public view of Defendant's residence for a period of years without a warrant, in violation of the Fourth Amendment. Separately, Defendant argues that the new information impeaches Agent Robinson's credibility because it suggests that his identification of Defendant from the video may have been motivated or biased. Defendant also argues that Agent Robinson's apparent willingness to conceal his conduct from prosecutors undermines his credibility as a witness and the integrity of the investigation he conducted.

*Brady* violation or not, it is clear that Defendant's *Franks* and suppression motions were decided on a record that was materially incomplete. Under such circumstances, I cannot, consistent with due process, allow this matter to proceed to trial with those decisions in place. At best, we have an untimely disclosure resulting from negligence or miscommunication between the Government and its investigative partners that can be adequately cured by reopening suppression proceedings. At worst, we have a serious disclosure transgression resulting from law enforcement's active concealment of the truth

from the defense, the Court, and perhaps even the Government—misconduct for which a greater sanction may be required.

Defendant seeks dismissal of the indictment, or alternatively, suppression of the Government's evidence. "The district court has broad discretion to redress discovery violations in light of their seriousness and any prejudice occasioned the defendant," and sanctions must be "consonant with the government's culpability and any prejudice to the defense." *United States v. Josleyn*, 99 F.3d 1182, 1196 (1st Cir. 1996). I will not award relief so "draconian" as that which Defendant requests on an incomplete record. *Id*.

It is therefore ORDERED as follows:

The Orders on Defendant's Motion to Suppress (ECF No. 44) and on Defendant's Request for *Franks* Hearing (ECF No. 28) are both VACATED.

Defendant's Motion to Suppress and for a *Franks* Hearing (ECF No. 21) is GRANTED IN PART, insofar as it requests a *Franks* hearing, and RESERVED IN PART, insofar as it seeks the suppression of evidence.[3]

This matter will be set for an evidentiary hearing to generate a record that will allow the Court to evaluate any Fourth Amendment concerns pertaining to the Government's evidence, the Government's compliance with applicable disclosure requirements, and Agent Robinson's conduct during the course of this investigation and prosecution.[4]

---

[3] From the record before me now, I conclude that Defendant can make the required preliminary showing that the search warrant affidavit contained false statements or omissions, material to the probable cause inquiry, "designed to mislead, or . . . made in reckless disregard of [misleading], the magistrate." *United States v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015).

[4] At the hearing, the parties represented that there remains some outstanding discovery to be produced in response to Defendant's May 15, 2026, letter. The Court expects the Government to complete its production before the next hearing in this matter.

Defendant has leave to file post-hearing briefing that, with the benefit of that record:

(1) Renews any motion to suppress evidence;

(2) Renews any argument that the Government has failed to comply with its disclosure obligations under the Constitution, the Federal Rules of Criminal Procedure, or this Court's previous orders; and

(3) Addresses the subject of further sanctions.

The schedule for post-hearing briefs will be established at the conclusion of the hearing with input from the parties.

## CONCLUSION

Ruling on Defendant's Motion for Sanctions (ECF No. 90) is RESERVED pending further proceedings. The Order on Defendant's Motion to Suppress (ECF No. 44) and Order on Defendant's Request for *Franks* Hearing (ECF No. 28) are VACATED. Defendant's Motion to Suppress and for a *Franks* Hearing (ECF No. 21) is GRANTED IN PART and RESERVED IN PART.

SO ORDERED.

Dated this 2nd day of July, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge